**[J-95-2024] [MO: Dougherty, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

| | | |
|---|---|---|
| CENTER FOR COALFIELD JUSTICE, WASHINGTON BRANCH NAACP, BRUCE JACOBS, JEFFREY MARKS, JUNE DEVAUGHN HYTHON, ERIKA WOROBEC, SANDRA MACIOCE, KENNETH ELLIOTT, AND DAVID DEAN | : : : : : : : : | No. 28 WAP 2024<br><br>Appeal from the Order of the Commonwealth Court at No. 1172 CD 2024, entered on September 24, 2024, affirming the Order of the Washington County Court of Common Pleas at No. 2024-3953, entered on August 27, 2024. |
| v. | : : : | SUBMITTED: October 11, 2024 |
| WASHINGTON COUNTY BOARD OF ELECTIONS, REPUBLICAN NATIONAL COMMITTEE AND REPUBLICAN PARTY OF PENNSYLVANIA | : : : : : : : | |
| APPEAL OF: REPUBLICAN NATIONAL COMMITTEE AND REPUBLICAN PARTY OF PENNSYLVANIA | : : : : | |

## DISSENTING OPINION

**JUSTICE MUNDY**                         **DECIDED: SEPTEMBER 26, 2025**

I join Justice Brobson's dissenting opinion in full. Additionally, I disagree with the Majority's holding that counties must notify electors through the SURE System's automatically generated emails of their defective returned mail-in ballots and their ability to cast a provisional ballot because it creates an unequal election process. The SURE email notice system fosters an uneven election process because electors are not required to provide their email addresses when applying for a mail-in ballot, and not all electors have home internet access and the ability to readily access their email. Further, the lack

of uniformity among counties' policies for notifying voters beyond the SURE System further contributes to the inequality in elections.

The Free and Equal Elections Clause of the Pennsylvania Constitution provides "[e]lections shall be free and equal; and no power, civil or military, shall at any time interfere to prevent the free exercise of the right of suffrage." PA. CONST. art. I, § 5. This Court has recognized that the "free and equal" mandate was "specifically intended to equalize the power of voters in our Commonwealth's election process[.]" *Pa. Democratic Party v. Boockvar*, 238 A.3d 345, 356 (Pa. 2020). Rather than equalizing the power of our voters, the Majority endorses the SURE System's automatic email notifications as the process to guarantee electors who have submitted a defective mail-in ballot are aware of their right to vote provisionally. *See* Maj. Op. at 48, 57. The Majority's approach does not account for the practical limitations of an email notice system that render it unequal. First, electors applying for a mail-in ballot are not required to provide a phone number or an email address on the application. *Pennsylvania Application for Mail-in Ballot*, https://www.pa.gov/content/dam/copapwp-pagov/en/vote/resources/documents-and-forms/PADOS_MailInApplication.pdf. Instead, the application advises electors that "phone and email are optional and used if information is missing on this form." *Id.* Applicants for a mail-in ballot are never warned that without providing an email address they will not receive updates on the status of their ballots or the opportunity to preserve their right to vote after submitting a defective mail-in ballot. This means that not all mail-in electors have provided email addresses and relying on the SURE System's email notifications favors those electors who have provided an email address (for an unrelated reason) over those who have not. The Majority's response is that accurate SURE coding affects the information displayed in the online mail-ballot status tracker website so electors who did not provide an email address are still able to see the status of their ballot

on the internet.  Maj. Op. at 49 n.46.  This illustrates my point that permitting the SURE system to generate email notices fosters an inherently unequal and nonuniform election because those voters who have provided an email address are given affirmative notice of ballot defects while those voters who have not provided an email address are not.  Apparently, the Majority is satisfied that due process is provided by a publicly available ballot status website, which the voters must check themselves.  *Id.*  This begs the question of why the Majority endorses the SURE system email notices that are not required by the Election Code and not a uniform method of providing notice to all mail-in electors who have submitted defective mail-in ballot return packets.

The second limitation of an email notice system is the electors' ability to readily access their email.  According to data from the U.S. Census Bureau for 2023, there are 356,685 Pennsylvania households that do not have home internet access from a cell phone provider or internet service provider, which is 6.1% of the state's 5,839,797 total households.  *ACS 1-Year Estimates Public Use Microdata Sample (2023)*, U.S. CENSUS BUREAU, https://data.census.gov/app/mdat/ACSPUMS1Y2023/table?cv=ACCESSINET &rv=ucgid&wt=WGTP&g=AwFm-BVBIECYg.  The U.S. Census Bureau data aligns with an August 15, 2023 statement from the Pennsylvania Broadband Development Authority (PBDA) that more than 276,000 households (5.2%) do not have internet access and an additional 52,000 households do not have reliable internet access.[1]  *Pennsylvania*

---

[1] On December 21, 2021, the PDBA was established as an independent agency tasked with creating a statewide broadband plan and distributing federal and state funds for broadband expansion projects.  In its March 25, 2025 annual report, it indicated a project to connect an additional 50,000 homes and businesses was slated for completion by December 31, 2026.  It further stated that "[o]f the remaining 255,000 locations that lack high-speed internet today, nearly 95,000 are in areas with projects already underway[,] and PDBA will not focus on the approximately 160,000 remaining locations that are eligible for [Broadband Equity, Access, and Deployment] funding in 2025 and beyond."  PBDA 2025 Annual Report (March 25, 2025), https://broadband.pa.gov/wp-content/uploads/2025/03/PBDA-Annual-Report-2025-1.pdf.  However, the Trump (continued…)

*Broadband Development Authority Approves Comprehensive Five-Year Action Plan to Expand Access Across the Commonwealth*, PA. DEP'T OF CMTY. & ECON. DEV. (Aug. 15, 2023), https://dced.pa.gov/newsroom/pennsylvania-broadband-development-authority-approves-comprehensive-five-year-action-plan-to-expand-access-across-the-commonwealth.  As not all households have internet access, email notice alone is an inherently unequal system.[2]  Further, the inequality of email notice is exacerbated the closer to the ballot submission deadline that a mail-in voter returns a defective mail-in packet, triggering a SURE System email notice, which the elector may not see in time to vote provisionally if the elector does not have home internet access to retrieve the email.

Moreover, the Majority's prescription of accurate SURE System coding of mail-in ballots, which generates an automatic email notice, as the minimum process required does not preclude counties from going beyond that minimum level of process, which

---

Administration has cancelled some of the federal funding and has placed most of the federal funding for the program on hold.  Charlotte Keith, *Millions for Public Wi-Fi, Digital Skills Classes in Pa. Cut as Trump Targets 'Racist' Broadband Program*, SPOTLIGHT PA (June 4, 2025), https://www.spotlightpa.org/news/2025/06/pennsylvania-broadband-grant-trump-canceled.

[2] Six percent of households without internet access may be a small minority of all households, but our election cases routinely examine small subsets of the overall vote to effectuate the Elections Code and the Free and Fair Elections Clause, as this case illustrates.  Here, there were 259 defective mail-in ballots disqualified in Washington County, which was 2.2% of the total mail-in ballots returned for the 2024 primary election. *Compare* Maj. Op. at 7-8 (stating 259 mail-in ballots were not counted) *with Official Results 2024 General Primary*, WASH. CNTY. BD. OF ELECTIONS (April 23, 2024), https://cms.washingtoncopa.gov/uploads/2024_Primary_Election_Summary_Official_Results_0521195ffc.pdf (reporting 11,185 total mail-in ballots were counted).  *See also Shapiro Administration Announces 57% Decrease in Mail Ballots Rejected in 2024 General Election*, PA. DEP'T OF STATE (Jan. 24, 2025), https://www.pa.gov/agencies/dos/newsroom/shapiro-administration-announces-57--decrease-in-mail-ballots-re.html#:~:text=%E2%80%9CEnsuring%20every%20registered%20Pennsylvania%20voter,a%20secrecy%20envelope%20(15%25) (stating 2.4% of all returned mail ballots were rejected in the 2024 primary election and 1% were rejected in the 2024 general election).

further perpetuates the current disparity in counties' operations. The Majority notes that "[i]f the Board enters accurate codes into the SURE system upon receipt of defective mail-in ballot return packets, further affirmative notice is not required." Maj. Op. at 57 n.53. While further notice is not required, the Majority does not preclude counties from continuing their current policies providing additional forms of notice. The Majority acknowledges 36 counties currently have "notice and cure" policies, in which county boards of elections contact electors by phone, mail, and/or email to provide them with an opportunity to correct their mail-in ballot packet or request a replacement. Maj. Op. at 53; *Pa. Counties' Notice-and-Cure Policies*, ACLU, https://www.aclupa.org/en/pennsylvania-counties-notice-and-cure-policies. These "notice and cure" policies vary by county, as documented in this case. In Fayette County, election officials send a postal letter and make a phone call to voters who have submitted mail-in ballot packets with errors on the outer envelope. Complaint, 7/1/24, at ¶ 53; Ex. 14. In Greene County, election officials compile a list with the names and phone numbers of qualified electors who have submitted a defective ballot and provides the list to political party committees upon request. *Id.* at ¶ 53; Ex. 15. Similarly, in Beaver County, election officials post a list of defective ballots to the county website and email the list to the leadership of both major parties. *Id.* at ¶ 53; Ex. 16 (stating this policy will continue "until statutory or court-ordered regulations supersede"). In contrast, at least 16 counties do not currently provide any notice or opportunity to cure and following our decision they will now presumably use the SURE System to the extent their electors have email addresses and the ability to access email. *See Pa. Counties' Notice-and-Cure Policies*, ACLU, *supra.* The Majority sets the floor for the process required, *i.e.*, all counties must now enter accurate codes into the SURE System, but it does not preclude counties from taking additional steps to contact voters or to compile and publish lists of voters who have submitted defective mail-in

ballots.  This illustrates the problem with the Department of State and our Court setting notice requirements, a policy decision that should be reserved for the General Assembly, whose tools and resources in forming social policy judgments along these lines have been recognized as superior to those of the judiciary.  *See, e.g.*, *Seebold v. Prison Health Servs., Inc.*, 57 A.3d 1232, 1245, 1251 (Pa. 2012).  In my view, we will not have equal or uniform elections if the power of the voters varies based on their counties' notice and cure policies.

For these reasons, I dissent.